**LIBERTY CENT. TRUST CO. et al. v. GREENBRIER COLLEGE FOR WO-MEN et al.**

No. 2786.

District Court, S. D. West Virginia, at Charleston.

Jan. 9, 1931.

W. C. Revercomb, of Charleston, W. Va., and S. M. Austin and J. S. McWhorter, both of Lewisburg, W. Va., for complainants.

H. B. Lee and W. Elliott Nefflen, both of Charleston, W. Va., R. A. Blessing, of Point Pleasant, W. Va., and J. H. White, of Lewisburg, W. Va., for defendants.

Before NORTHCOTT, Circuit Judge, and McCLINTIC and GLENN, District Judges.

### Findings of Fact.

NORTHCOTT, Circuit Judge.

This is a suit in equity seeking to enjoin the state road commission of West Virginia, a corporation, the county court of Greenbrier county, a corporation, and Echols Bros., Incorporated, from building a road over and on certain real estate situated in Greenbrier county, W. Va. The legal title to this real estate is vested in the Greenbrier College for Women, a corporation.

Plaintiffs are citizens of the state of Missouri, and are trustees under a deed of trust, in which the real estate in question was conveyed to them in trust to secure the payment of bonds issued upon said real estate in the amount of $167,000. The property conveyed by the deed of trust is not sufficient in present value to pay the said sum of $167,-000. The state road commission was proposing, under the statutes of West Virginia, to at once enter upon and take possession of the right of way over the real estate in question, pending condemnation proceedings. The proposed road is a part of the state road system of West Virginia and a part of the road across the entire state, known as the "Midland Trail," itself a national road. It is contended by the plaintiffs that the statutes under which the state road commission is acting are unconstitutional, as being in violation of the "due process" clause of the Fourteenth Amendment of the Constitution of the United States, and also in violation of the

"just compensation" clause of section 9 of article 3 of the Constitution of West Virginia.

The suit was brought in the District Court of the United States for the Southern District of West Virginia, the judge of which court granted a temporary restraining order, and proceeded to convene a three-judge court under section 266 of the Judicial Code as amended (section 380, title 28, USCA).

Under date of August 6, 1930, a written notice was addressed to Judge C. W. Campbell, president of the board of trustees of the Greenbrier College for Women, stating that the state road commission and its contractors and agents were entering upon the lands of the Greenbrier College for Women for the purpose of constructing a state road, and that the county court would apply within sixty days from the service of the notice to the circuit court of Greenbrier county for the appointment of commissioners to assess the damages to the lands. This notice was signed by the county court of Greenbrier county by Julius K. Monroe, county road engineer. At the time of the serving of this notice, the county court of Greenbrier county had entered no order of record authorizing such proceeding by the county road engineer. The judge of the District Court, on September 6, 1930, granted the restraining order prayed for, and the matter was set down for hearing on September 12, 1930. On that date a second restraining order was issued, and the cause again set down for hearing on September 20, 1930, at which time an amended bill was tendered by the plaintiffs, and the defendants filed a written motion to dismiss the original and amended bills, which motion was taken under advisement by the court. The court continued the restraining order in force, and in October, 1930, after filing a written memorandum, amended the order so as to permit the state road commission, the county court of Greenbrier county, and Echols Bros., to proceed with the building of said road, according to law.

Thereafter the state road commission requested the county court of Greenbrier county, in accordance with the state statutes, to furnish the right of way through the grounds of the Greenbrier College for Women. The county court of Greenbrier county refused to furnish such right of way by an order entered, and thereupon the state road commission, acting under section 31 of chapter 6, of the Acts of West Virginia Legislature of 1923, served a notice on the president of Greenbrier College for Women that they were going to enter upon the lands in question and build the road. The plaintiff thereupon filed their supplemental bill, and asked for an injunction restraining the state road commission from further entering upon the lands of Greenbrier College for Women. The court granted the restraining order until the matter could be heard before the court as at present constituted.

### Conclusions of Law.

Section 31 of chapter 6 of the Acts of West Virginia Legislature of 1923 reads as follows:

"Sec. 31. Whenever it shall be necessary from any cause to acquire any lands for the purpose of constructing, widening, straightening, grading or altering any state road which cannot be acquired at a satisfactory price by purchase or grant, the said commission is hereby empowered to condemn the necessary lands therefor, together with all necessary rights and easements, under the right of eminent domain, or it may proceed as provided in section one hundred and thirty-eight of this act. The cost of all rights of way acquired for any state or county-district road, or roads, or for the purpose of widening, straightening, grading, or altering any such road or roads, shall be paid by the county court of the county in which such road or roads shall lie.

"If any county court fails or refuses to obtain any right of way necessary for the purpose of constructing, widening, straightening, grading or altering any state road within thirty days after being requested so to do by the state road commission, then the state road commission may secure such right of way in the manner hereinabove provided and pay for the same out of the state road fund, which fund shall be reimbursed by the county court of the county in which such right of way is obtained. All claims for reimbursement for right of way expenditures incurred by the state road commission subsequent to April twenty-first, one thousand nine hundred and twenty-one, shall be filed by the commission with the clerk of the county court of the county where such expenditures are made, which claims shall be audited and paid as other claims against the county. Such claims shall be payable to the state road commission and returned by it to the state road fund."

Section 138 of chapter 6 of the Acts of West Virginia Legislature of 1923, under

which the state road commission proceeded to act upon refusal of the county court of Greenbrier county, reads as follows:

Sec. 138. Establishment of County—District Roads; Compensation to Landowners.

"Upon hearing the parties interested in an application for a county-district road, said county court shall decide for or against undertaking the proposed work on behalf of the county. If it decides in favor of the same and the compensation for damages, if any, to be paid to any proprietor or tenant be not fixed by agreement, it shall order proceedings to be instituted and presented in its corporate name in the circuit court of the county, pursuant to chapter forty-two of the code of West Virginia, to ascertain what will be a just compensation, if any, to each proprietor or tenant for the land proposed to be taken, and the said court shall lay a sufficient levy for that purpose. But when such compensation, if any, shall be so ascertained, it shall be at the option of the county court to pay the same or to abandon the proposed undertaking. If it decides to pay the same, it shall lay a sufficient levy for that purpose as provided in this act. In any case where the petition is for the establishment or alteration of a county-district road leading from the main public road or roads, the court may refuse to undertake the proposed work, unless the petitioner or some one for him, shall deposit with said county court a sufficient sum to pay all damages and costs sustained by reason of the establishment or alteration of such road. In such case, if it seems proper so to do, the court may establish any such road, upon conditions that the petitioner shall pay all costs and damages as aforesaid, and make and keep in repair such road, and erect and maintain in good repair one or more gates across such road where the road passes through a fence or fences, as is provided in section one hundred and sixty-nine of this act; and the court may also impose upon such petitioner, his heirs or assigns, and upon the public such other conditions in reference to such road as the court may deem just. In the event that any of the conditions, so imposed by the court are not fully complied with, the court at any time, after giving at least sixty days' notice to the public and to the petitioner, his heirs or assigns, in such manner as the court may prescribe, may discontinue or abandon such road.

"But the court, instead of proceeding in the manner hereinbefore provided in this section, is authorized to enter upon any lands, other than those prohibited by law, and locate and build said roads. Within sixty days after such entry the county court shall petition the circuit court to nominate thirteen freeholders, and the said circuit court, or the judge thereof in vacation, shall nominate, within thirty days after the filing of such petition, thirteen freeholders, of whom the county court shall strike off four and the property owners or their representatives, or such of them as appear, shall strike off four, and after eight names are stricken from the list the remaining five shall be commissioners appointed to assess the damages hereinafter provided. But where there is no appearance for the property owners, or if they appear and do not agree as to any one or more of the names to be stricken off on their behalf, or the right to strike off any one or more names is waived on the part of either of the property owners, or their representatives, or from any cause the full number shall not be stricken off by the court or the parties aforesaid, the names or additional names, as the case may be, to be stricken from the list in order to reduce the number to five, shall be ascertained by lot under the direction of the court. Vacancies shall be filled, and any commissioner, for good cause shown, may be removed by the court.

"The said commissioners shall go upon the land and assess the damages and benefits, taking into consideration the benefits accruing to the property and the damages to it sustained, and shall fix the compensation or damages as said commissioners may seem [deem] proper, and the amount so fixed shall be paid out of the road fund of the county or district at the discretion of the court.

"If the damage so assessed be not satisfactory to the property owner or owners, proprietor or tenant, or to the court, he or they, or said court, may within six months after the assessment aforesaid, appeal or apply to the circuit court of the county and demand a trial therein, as in other condemnation proceedings; Provided, however, before entering upon said land as authorized by this section, it shall be the duty of the county court or its representatives to serve notice upon the owner or owners of said land, as provided by law, notifying such owner or owners that the road is to be located upon their land under the authority of this section; Provided, however, that when a state road shall be located by the state road commission, in, upon or through any property owned or controlled by the state, no compensation shall be paid for such right-of-way. Any person who shall obstruct said road while in process

of construction or repair, or interfere with the engineer or other persons in charge of said work or construction, their agents or employees, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not to exceed fifty dollars, and may be imprisoned not to exceed one month, or both, in the discretion of the court.

"In any proceeding authorized by this section, the revenues applicable to the payment of any damage assessed shall be deemed sufficient security, and to have been pledged for the payment thereof.

"After a public road has been established and constructed heretofore or hereafter and used as such for a period of one year, and no claim for damages or compensation has been made, the right-of-way for such road shall vest in the county court or the state, as the case may be, and they shall not be liable for damage or compensation arising out of the construction of said road."

The action of the road commission is contested and the injunction sought on the ground that the notice given by the road commission was not a proper notice, and on the further ground that the statutes in themselves are in violation of the Constitution of the United States and of the state of West Virginia, in that the public faith and credit of the state are not pledged to the payment of the damages, the damages being paid only from a particular fund, and because there is no adequate provision for enforcing payment of compensation.

We are of the opinion that the preliminary notice served by the road commission was a sufficient compliance with the statute, and that the statutes are not unconstitutional and are not in violation of "due process" clause of the Federal Constitution.

The preliminary notice required by sec. 138, c. 6, Acts of 1923, need only be served on those in possession of the lands, and lienors need not be given notice until the filing of the petition in the circuit court. Keystone Bridge Co. v. Summers et al., 13 W. Va. 476; State Road Commission v. McMurray, 103 W. Va. 346, 137 S. E. 530; Mortgage Co. of Maryland v. Lory et al., 109 W. Va. 310, 154 S. E. 136.

This holding of the West Virginia court is binding upon the federal courts. North Laramie Land Co. v. Hoffman et al., 268 U. S. 276, 45 S. Ct. 491, 69 L. Ed. 953; Baltimore Traction Co. v. Baltimore Belt R. R. Co., 151 U. S. 137, 14 S. Ct. 294, 38 L. Ed. 102.

It is well settled that principles of law establishing a rule of real property in the state courts are binding on the federal courts. McKeen v. Delancy's Lessee, 5 Cranch, 22, 3 L. Ed. 25; Kinney et al., etc., v. Clark et al., 2 How. 76, 11 L. Ed. 185; Suydam v. Williamson, 24 How. 427, 16 L. Ed. 742; Beauregard v. New Orleans, 18 How. 497, 15 L. Ed. 469; Williams v. Kirtland, 13 Wall. 306, 20 L. Ed. 683; Lippincott v. Mitchell, 94 U. S. 767, 24 L. Ed. 315; Bondurant v. Watson, 103 U. S. 281, 26 L. Ed. 447; Britton v. Thornton, 112 U. S. 526, 5 S. Ct. 291, 28 L. Ed. 816; Ridings v. Johnson, 128 U. S. 212, 9 S. Ct. 72, 32 L. Ed. 401; U. S. v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285.

The highest court in West Virginia has decided that the statute does not violate the Constitution of West Virginia. Keystone Bridge Co. v. Summers et al., supra; McGibson v. County Court, 95 W. Va. 338, 121 S. E. 99.

"The due process clause does not guarantee to the citizen of a state any particular form or method of state procedure. Under it he may neither claim a right to trial by jury nor a right of appeal. Its requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard and to present his claim or defense; due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. Reetz v. Mich., 188 U. S. 505, 508, 23 S. Ct. 390, 47 L. Ed. 563; [State of Missouri ex rel.] Hurwitz v. North, 271 U. S. 40, 46 S. Ct. 384, 70 L. Ed. 818; Bauman v. Ross, 167 U. S. 548, 593, 17 S. Ct. 966, 42 L. Ed. 270; Backus v. Union Depot Co., supra, 169 U. S. 569, 18 S. Ct. 445, 42 L. Ed. 853.

"Nor does the equal protection clause exact uniformity of procedure. The Legislature may classify litigation and adopt one type of procedure for one class and a different type for another. That condemnation proceedings under the Highway Act are conducted on behalf of the state is in itself sufficient basis for the exercise of the legislative judgment in providing for it a different procedure from that prescribed for the exercise of eminent domain by a private corporation. See Backus v. Union Depot Co., supra, 169 U. S. 570, 18 S. Ct. 445, 42 L. Ed. 853." Dohany v. Rogers, State Highway Commissioner of Michigan, et al., 281 U. S. 362, 50 S. Ct. 299, 302, 74 L. Ed. 904, 68 A. L. R. 434.

That the taking of the property under proper procedure before the actual payment of compensation is not of itself a violation of the "due process" clause has been repeatedly held, and we know of no authority to the contrary. McGibson v. County Court, supra; Keystone Bridge Co. v. Summers, supra; 20 Corpus Juris, 837; Backus v. Fort St. Union Depot Co., 169 U S. 557, 18 S. Ct. 445, 42 L. Ed. 853; Bragg v. Weaver, 251 U. S. 57, 40 S. Ct. 62, 64 L. Ed. 135; Joslin Mfg. Co. v. City of Providence, 262 U. S. 668, 43 S. Ct. 684, 67 L. Ed. 1167; Dohany v. Rogers, 281 U. S. 362, 50 S. Ct. 299, 74 L. Ed. 904, 68 A. L. R. 434.

Of course, the payment of the award must be insured, and it is held that the full faith and credit of the political division involved must be pledged to the payment. Sweet v. Rechel, 159 U. S. 401, 16 S. Ct. 43, 40 L. Ed. 188; 20 Corpus Juris, 651, 652.

Here it is contended that because, when the state road commission pays under the statute, it is to pay out of a certain fund, the road fund, the full faith and credit rule is not complied with. Here the road commission is proceeding under section 138 of chapter 6 of Acts of 1923, where the full faith and credit of the county is behind the taking and compensation is payable out of any or all the funds of the county.

There can be no doubt that under the West Virginia decisions the state road commission or the county court of Greenbrier county may by mandamus be compelled to comply with the statutes. McGibson v. County Court, 95 W. Va. 338, 121 S. E. 99.

This being true, there is no question in our minds but that the owner of the property taken under these statutes will have a complete remedy to secure the payment of compensation. We have confidence in the fact that the courts of the state would find not only a proper but a prompt method of enforcing the payment of compensation under these circumstances, should there be any attempt to evade it. The presumption is, of course, that there would be no such attempt at evasion. There can be no doubt as to the security of the property owner for the payment of compensation.

It is contended on behalf of the plaintiffs that the Legislature of West Virginia exceeded its power by attempting to compel county courts to use county funds for rights of way for state highways. We are of the opinion that the Legislature has such power. Hutchinson v. County Court, 100 W. Va. 461, 130 S. E. 654; State ex rel. Sprague v. County Court, 93 W. Va. 481, 117 S. E. 135; 15 Corpus Juris, § 283; County of Mobile v. Kimball et al., 102 U. S. 691, 26 L. Ed. 238.

Federal courts do not interfere with the internal affairs of the several states, unless there is a plain necessity for such a course, and no such necessity here exists. On the contrary, while the proceeding authorized by the West Virginia statutes is a summary one in some respects, and should be used only with care and discretion, it is a perfectly proper and lawful one well within the power of the sovereign, the state. The presumption is in favor of the constitutionality of a state statute. The matter of the exercise of the power conferred by the statute is placed within the discretion of the body in charge of road building in the state, the road commission, and that body is presumed, until the contrary is conclusively shown, to have acted properly in the exercise of that discretion.

Questions have been raised as to the jurisdictional amount being involved, as to the diversity of citizenship of the parties, as to the right of the plaintiffs to maintain this suit, and as to the right of a federal court to pass upon a question of this character, but, in view of our conclusions as above stated, we do not consider it necessary to discuss them.

The injunction will be denied and the suit dismissed, but, as the restraining order, as issued originally, was properly issued and kept in effect until the county court of Greenbrier county entered its nunc pro tunc order on October 2, 1930, the costs up to that time will be paid by the defendants, all other costs to be paid by the plaintiffs.